IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-_____

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,**

    Plaintiff,

v.

**TEAMSTERS LOCAL UNION NO. 455,**

    Defendant.

## COMPLAINT

### NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of sex, and to provide appropriate relief to Wendy March. As alleged with greater particularity below, the Equal Employment Opportunity Commission alleges that Defendant, Teamsters Local Union No. 455, discriminated against March because of her sex, female, by subjecting her to a sexually hostile work environment. The EEOC alleges that Teamsters violated Title VII in its capacity as a labor organization which is explicitly prohibited from discriminating against individuals on the protected basis of sex.

## JURISDICTION AND VENUE

1.  Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345.

2.  This action is authorized and instituted pursuant to § 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f)(1) and (3), and § 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

3.  The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Colorado.

## PARTIES

4.  The EEOC is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII and is expressly authorized to bring this action by § 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

5.  At all relevant times, Teamsters Local #455 ("Teamsters" or "Union") has continuously been doing business in the State of Colorado.

6.  At all relevant times, Teamsters has continuously been a labor organization engaged in an industry affecting commerce under §§ 701(d), (e), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(d), (e), (g) and (h).

7.  Teamsters had 15 or more members for each working day in each of 20 or more calendar weeks in 2020 and/or 2021.

8.  Teamsters is a certified collective bargaining representative and labor organization for several thousand members.

9.  Teamsters represents unionized workers employed by UPS at its facility located at 3795 Frontier Ave., Boulder, CO 80301.

10. Teamsters represents these workers with respect to their wages, hours, and other terms and conditions of employment, such as workplace disputes, contract negotiations, and disciplinary proceedings.

## ADMINISTRATIVE PROCEDURES

11. More than 30 days prior to the institution of this lawsuit, Wendy March filed a charge of discrimination with the EEOC alleging Teamsters violated Title VII of the Civil Rights Act.

12. The EEOC provided Teamsters notice of the charge of discrimination.

13. The EEOC investigated the charge of discrimination.

14. Based on the evidence obtained during the investigation, the EEOC issued a determination finding reasonable cause to believe that Teamsters violated Title VII.

15. The determination the EEOC sent to Teamsters included an invitation to join the EEOC in informal methods of conciliation in an attempt to eliminate the alleged unlawful employment practices.

16. On June 30, 2022, the EEOC notified Teamsters that the conciliation process did not result in an agreement between the parties.

17. All conditions precedent to the institution of this lawsuit have been fulfilled.

## GENERAL ALLEGATIONS

18. Since at least September 2020, Teamsters has engaged in unlawful employment practices based on sex in violation of Section 703(c)(1) of Title VII, 42 U.S.C. § 2000e-2(c)(1), by creating a hostile work environment for March because of her sex.

19. March has worked as a Business Manager for UPS since 2005.

20. In April 2019, Dan Murphy was employed by Teamsters' as a Union Business Agent.

21. As a Union Business Agent for Teamsters, Murphy was supervised by the Union President.

22. In Murphy's role as a Union Business Agent for Teamsters Local 455, he was responsible for meeting with UPS's management personnel, such as March, to review and discuss union grievances that typically involve issues such as employee compensation, discipline, and other terms, conditions, and privileges of employment.

23. On September 1, 2020, March met with Murphy and union stewards Eric Snodgrass and Wilson ("Ty") Johnson at the UPS facility in Boulder, Colorado.

24. On more than one occasion during the meeting, Murphy asked Snodgrass and Johnson to leave the room so Murphy could speak to March privately.

25. When Murphy and March were alone, Murphy told March that he had been attracted to her for a long time and that they should get together, and that if they did "sparks would fly."

26. Murphy made a number of offensive comments such as asking

   a. whether March and her husband had "dry spells";

   b. whether March masturbated when she and her husband had "dry spells."

   c. that March watch pornography with him.

   d. that March send him nude photos of herself.

27. Murphy made these and other comments during two or three private sessions that Murphy orchestrated to occur during the course of the September 1, 2020 meeting.

28. Murphy told March that she would have to make the first move, but that they could close the blinds, lock the door, and have sex right there in the room.

29. Murphy explained how the two of them could have an affair, while he caressed her knee.

30. During these private conversations, Murphy positioned himself on a rolling chair so that he was in between March and the exit, while she had her back to the corner of the room.

31. March felt trapped and unable to escape Murphy's unwanted attentions.

32. As March was trapped at her desk, Murphy sat beside her, spread his legs, and began touching his erection through his clothes while telling her how excited he was.

33. March repeatedly told Murphy she was not interested.

34. After the meeting ended, Murphy texted March that same day, telling her, "Ty for today and I'm dead serious about our talk. I will wait."

35. "Ty" is an abbreviation for "thank you."

36. March did not respond to Murphy's text message, sent on September 1, 2020, at 11:29 a.m.

37. Murphy then sent a follow up text later that night, asking March if she was okay.

38. March also did not respond to Murphy's second text message sent on September 1, 2020 at 9:44 p.m.

39. March took three months of leave after the above incident as a result of the harassment she experienced.

40. Murphy's inappropriate sexual conduct and comments on September 1, 2020, interfered with March's work performance.

41. Murphy's inappropriate sexual conduct and comments on September 1, 2020, created an intimidating, hostile, or offensive working environment for March.

42. On September 2, 2020, March reported the incident to a UPS HR Representative.

43. Also on September 2, 2020, March filed a report with the Boulder County Police Department.

44. On September 3, 2020, UPS held a meeting at its Boulder facility, attended by Murphy as well as officials from both UPS and Teamsters.

45. At the meeting on September 3, 2020, Murphy admitted that he had engaged in an "adult conversation" with March on September 1, 2020, but refused to provide any other details.

46. At the meeting on September 3, 2020, UPS advised that due Murphy's behavior on September 1, 2020, he was no longer allowed on the premises of its Boulder facility.

47. September 3, 2020 was the second time UPS had banned Murphy from the Boulder UPS facility because of inappropriate hostile conduct toward a female UPS manager.

48. A few weeks prior to September 1, 2020, during a grievance meeting attended by two UPS managers, one male and one female, Murphy got angry and yelled at the male UPS manager words to the effect that he must tell the female manager to "stop acting like a bitch."

49. As a result of Murphy's conduct, UPS banned him from the UPS Boulder facility.

50. Upon information and belief, Teamsters took no action against Murphy for his inappropriate and hostile conduct toward a female UPS manager prior to September 1, 2020.

51. Upon information and belief, Teamsters ignored the prior ban imposed by UPS when it sent Murphy to meet with March on September 1, 2020.

52. At the meeting on September 3, 2020, UPS questioned why Murphy was present because he was previously banned from the facility, and the ban had never been lifted.

53. Prior to September 2020, Teamsters was also aware of another occasion when Murphy had sexually harassed and inappropriately touched a woman during a union fundraising event.

54. The harassment and inappropriate touching occurred in the presence of a high-ranking Teamsters official.

55. After the event, UPS officials failed to take any action against Murphy for his conduct at the poker fundraiser. On September 23, 2020, the Boulder County District Attorney ("Boulder DA's Office") brought criminal charges against Murphy based on his conduct toward March on September 1, 2020.

56. The Boulder DA's Office charged Murphy with the criminal offense of "Harassment – obscene language or gesture," citing Colorado Revised Statute ("C.R.S.") § 18-9-111(1)(b).

57. In June 2021, when Teamsters had taken no action against Murphy, March filed a charge of discrimination with the EEOC.

58. In response to the charge, Teamsters asserted that it was conducting an investigation into the matter.

59. Teamsters subsequently concluded that Murphy had not sexually harassed March.

60. On August 13, 2021, Murphy pled guilty to the criminal offense of harassment for directing obscene language or making an obscene gesture in violation of Colorado Revised Statute ("C.R.S.") § 18-9-111(1)(b).

61. As part of the disposition, or guilty plea, the court sentenced Murphy to 18 months of probation and required that he perform community service, write an apology letter to March, refrain from contact with March, and take courses while on probation.

62. On August 27, 2021, Teamsters suspended Murphy for one week without pay for his actions toward March, described as "poor personal conduct."

## FIRST CLAIM FOR RELIEF
### Sexually Hostile Work Environment
### (42 U.S.C. §§ 2000e-2(c))

63. The allegations contained in the foregoing paragraphs are hereby incorporated by reference.

64. At all relevant times, Teamsters engaged in an unlawful employment practice as prohibited by Section 703(c)(1) of Title VII, 42 U.S.C. § 2000e-2(c)(1).

65. At all relevant times, Murphy was an agent for Teamsters.

66. Teamsters subjected March to a sexually hostile work environment.

67. The sexually abusive conduct and comments described above were unwelcome to March.

68. The sexually abusive conduct and comments described above had the purpose or effect of unreasonably interfering with March's work performance or creating an intimidating, hostile, or offensive working environment for March.

69. The sexually abusive conduct and comments described above were sufficiently severe or pervasive to alter the terms and conditions of March's employment.

70. Prior to Murphy's sexual harassment on March on September 1, 2020, his sexually inappropriate and abusive conduct toward women was known or should have been known to Teamsters based on at least two prior complaints about Murphy engaging in such conduct towards women.

71. Teamsters failed to take appropriate steps to prevent Murphy, while acting in his official role as Union Business Agent for Teamsters Local 455, from engaging in sexually abusive or inappropriate conduct toward women.

72. Teamsters failed to take appropriate steps to prevent Murphy from creating a sexually hostile work environment for March.

73. Teamsters failed to take appropriate steps to remedy the sexually hostile work environment it imposed on March.

74. The effect of the practices complained of in the paragraphs above has been to inflict emotional pain, suffering, and inconvenience upon March and to deprive her of the financial and other benefits of her employment with UPS.

75. The unlawful employment practices complained of in the forgoing paragraphs were intentional.

76. The unlawful employment practices complained of in the forgoing paragraphs were done with malice or reckless indifference to March's federally protected rights.

## **PRAYER FOR RELIEF**

Wherefore, the EEOC respectfully requests that this Court:

A. Grant a permanent injunction enjoining Teamsters, its officers, agents, servants, employees, successors, assigns and all persons in active concert or participation with Teamsters, from engaging in any employment practice that discriminates on the basis of sex;

B. Order Teamsters to institute and carry out policies, practices, and procedures that prevent its officers, agents, and members from engaging in sexual harassment or sex discrimination against any individual in the workplace or at any union-sanctioned event;

  C. Order Teamsters to make March whole by providing appropriate backpay and lost benefits with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices;

  D. Order Teamsters to make March whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, including but not limited to medical expenses, in amounts to be determined at trial;

  E. Order Teamsters to make March whole by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of above, including but not limited to emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life, in amounts to be determined at trial;

  F. Order Teamsters to pay March punitive damages for its malicious or reckless conduct described in the paragraphs above, in amounts to be determined at trial;

  G. Grant such further relief as this Court deems necessary and proper in the public interest, and;

  H. Award the EEOC its costs of this action.

*[signature block on following page]*

RESPECTFULLY SUBMITTED this 28th day of September, 2022.

        Gwendolyn Young Reams
        Acting General Counsel

        Christopher Lage
        Deputy General Counsel

        Mary Jo O'Neill
        Regional Attorney
        Phoenix District Office

        Rita Byrnes Kittle
        Assistant Regional Attorney

        */s/ Karl Tetzlaff*
        Karl Tetzlaff
        Trial Attorney
        EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
        Denver Field Office,
        950 17th Street, Suite 300
        Denver, CO 80202
        Phone: 720-779-3619
        Email: karl.tetzlaff@eeoc.gov

**PLEASE NOTE**: For purposes of service upon the EEOC, it is sufficient that pleadings, notices, and court documents be served upon the Trial Attorneys. Duplicate service is not required on the Acting General Counsel and Deputy General Counsel in Washington, D.C.